**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JOSE LUIS CARRILLO HERNANDEZ, MARIA CRUZ FIGUEROA AND THE LEGAL CONJUGAL PARTNERSHIP COMPOSED BETWEEN THEM,**<br>Plaintiffs,<br>vs.<br>**CONSTRUCTORA SANTIAGO II, CORP.; LOBE CONTRACTORS AND EQUIPMENT, INC.; DEFENDANT(S) ABC INSURANCE COMPANY; DEFENDANT(S) DEF.**<br>Defendants. | **CIVIL NO.**<br><br>RE: AGE DISCRIMINATION (ADEA); DISABILITY DISCRIMINATION (ADA); RETALIATION; UNJUSTIFIED DISMISSAL; ERISA/COBRA VIOLATION; VACATION LEAVE PAY; CHRISTMAS BONUS; ERISA-COBRA VIOLATION.<br><br>PLAINTIFFS DEMAND TRIAL BY JURY |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

**COME NOW**, Plaintiffs Jose Luis Carrillo Hernandez ("Carrillo"), his wife Maria Cruz Figueroa ("Cruz") and the legal conjugal partnership composed between them, in the case at bar, through their undersigned attorneys and respectfully STATE, ALLEGE and PRAY:

## I. NATURE OF THE ACTION AND JURISDICTION

1. Plaintiffs Carrillo and Cruz hereby invoke this Honorable Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 for this action seeking compensatory damages, equitable and injunctive relief, costs and attorneys fees brought pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621 *et seq.,* and the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* as a result of defendant's continuous unlawful and willful employment practices (hostile work environment and harassment, disability and age discrimination and

retaliation), which eventually led to Carrillo' unlawful retaliatory termination from his employment with Constructora Santiago II, Corp. ("CS") due to, among others, his age and disability, by the named party defendants.

2. Plaintiffs further invoke this Honorable Court's federal question subject matter jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001, *et seq.* inasmuch the herein named party defendants failed to timely provide Carrillo and other qualified beneficiaries with a COBRA notice that would have allowed Carrillo to continue with his employee group health plan insurance following the "qualifying event" of his termination of employment with the herein named party defendants.

3. Plaintiffs additionally summon this Honorable Court's pendent/supplemental jurisdiction under 28 U.S.C. § 1367 seeking redress for violations of various Puerto Rico laws, including but not limited to, Act No. 100 of June 30, 1959, 29 L.P.R.A. §146 *et seq.*; Act No. 44 of July 2, 1985, 1 L.P.R.A. §501 et seq.; Act No. 80 of May 30, 1976, 29 L.P.R.A. §185a-185l; Act No. 115 of December 20, 1991, 29 L.P.R.A. §194 et seq.; Act No. 180 of July 27, 1998, 29 L.P.R.A §250 et seq.; Act No. 148 of June 30, 1969, 29 L.P.R.A §501 et seq.; Puerto Rico's Constitution, Article II**,** Sections 1, 8, 16, 20 and Article 1802 of Puerto Rico's Civil Code, 31 L.P.R.A. § 5141.

4. Plaintiffs invoke this Honorable Court's supplemental/pendent jurisdiction under 28 U.S.C. § 1367 to hear and decide those claims arising under the Commonwealth of Puerto Rico's Constitution and other Puerto Rico laws invoked herein because such

claims arose from the same nucleus of operative facts giving rise to Plaintiffs' claims under federal law.

5. On November 30, 2015, Carrillo timely filed with the Puerto Rico Department of Labor's Anti-Discrimination Unit ("ADU"), an Equal Employment Opportunity Commission ("EEOC") deferral agency, an administrative charge claiming, among other things, that he was unlawfully harassed while employed with defendants and later on terminated from his employment due to his age and disability.

6. The previously stated administrative employment discrimination charge was assigned numbers uadau 15-787c and 16H-2016-00103C.

7. On July 21, 2016, the EEOC issued and mailed a Right-To-Sue Notice in the above referenced EEOC Charge No. 16H-2016-00103. On or about July 29, 2016, Carrillo received the before stated Right-To-Sue Notice issued by the EEOC.

8. Plaintiffs Carrillo and Cruz seek redress for the damages suffered and those damages they continue to suffer as a result of defendants' continuous unlawful employment discrimination on the basis of Plaintiff Carrillo's age, disability, violation of his constitutional rights, unjustified dismissal and for their retaliation because Carrillo engaged in various statutorily protected activities, including but not limited to, opposing the before mentioned unlawful employment practices, and seeking and receiving treatment at the Puerto Rico State Insurance Fund for his work related disability.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## II. THE PARTIES

10. Plaintiff Carrillo is a male citizen of the United States of America and is a resident of Guaynabo, Puerto Rico. Carrillo is married to his wife Cruz.

11. Plaintiff Cruz is a female citizen of the United States of America and is a resident of Guaynabo, Puerto Rico. Cruz is married to her husband Carrillo.

12. Carrillo was born on August 8, 1962 and as such, he was within ADEA's protected age group at the time that his termination of employment took place. At the present Carrillo is 54 years of age.

13. During his employment with CS, on or around 2007, Carrillo suffered physical injuries while uploading pieces of machinery into a platform. As a result of such work related accident, Carrillo suffered and was diagnosed with herniated discs and other lumbar lower back impairments, all of which are physical disabilities that are covered by the ADA.

14. Soon thereafter Carrillo had to take physical therapies for his back strain ailments and disabilities and on other occasions had lumbar blocks performed to relieve his back pains.

15. For all of these work related physical conditions, Carrillo received treatment at the State Insurance Fund, and was ultimately diagnosed and/or awarded with a five percent (5%) partial disability.

16. Since then, defendants CS and its agents were aware and cognizant of these disabilities and perceived Carrillo to have a record of such disabilities while he was an employee at CS and the other defendant employers.

17. Carrillo's disabilities affect his major life activities of working and sleeping, among others.

18. At all times relevant hereto, Plaintiff Carrillo was a "qualified individual with a disability" within the meaning of such term as provided by the ADA and Puerto Rico law. Carrillo could perform his former essential job functions with CS with and without reasonable accommodation.

19. At all relevant times to this Complaint, Carrillo was an "employee" within the definition of such term as provided by ADEA, ADA, COBRA, and the laws of the Commonwealth of Puerto Rico which have been invoked herein.

20. At all relevant times to this Complaint, named party Defendants, Constructora Santiago, II Corp., and Lobe Contractors and Equipment, Inc., (hereinafter collectively referred to as "Constructora Santiago" or "CS") are corporations or other legal entities with the legal capacity to sue and be sued.

21. Defendants CS are construction entities authorized to do business in the Commonwealth of Puerto Rico and upon information and belief they are incorporated under the laws of the Commonwealth of Puerto Rico.

22. Defendants CS are considered "employers" within the definition of such term as provided by the ADEA, the ADA, the COBRA, and the laws of the Commonwealth of Puerto Rico that have been invoked herein.

23. At all relevant times hereto, Constructora Santiago has employed twenty (20) or more employees.

24. At the time the facts alleged in this Complaint took place, Defendants CS were Carrillo's single and/or joint employer. Defendants CS operations are substantially related and intertwined with each other; they share among themselves common management; have centralized control of their labor relations or personnel matters; their employees have been interchanged amongst all named party defendants, and they all share common ownership.

25. Defendants CS are engaged in an industry affecting commerce within the meaning of such term as provided by the ADEA, 29 U.S.C. §630(h); the ADA, 42 U.S.C. §12111(7) and the ERISA, 29 U.S.C. §1002(12).

26. Defendants CS are considered "persons" within the meaning of such term as provided by the ADEA, 29 U.S.C. §630(a); the ADA, 42 U.S.C. §12111(7) and the ERISA, 29 U.S.C. §1002(9).

27. Defendants ABC Insurance Companies are the insurers of all the named party defendants herein. Defendants ABC Insurance Companies have insurance policies which at all times relevant hereto, were in full effect and cover the liabilities and/or unlawful acts which were committed by the defendants herein mentioned.

28. Plaintiffs are using the fictitious names of ABC because at this time they do not know the real names of such insurance companies. Once these names become known, Plaintiffs will move this Honorable Court for the substitution of such party defendants.

29. Defendants DEF are the fictitious names of other individuals or employers that jointly participated along with Defendants CS in other unlawful acts against Plaintiff

Carrillo. Plaintiffs are using the fictitious names of DEF because at this time they do not know the real names of these defendants. Once these names are known, Plaintiffs will move this Honorable Court for the substitution of said party defendants.

30. All named party defendants that comprise CS and their agents have received actual knowledge of Carrillo's administrative charges claiming, among others, harassment and employment discrimination filed before the ADU and the EEOC.

31. All named party defendants herein are jointly and severally liable to Plaintiffs for the unlawful employment practices and damages claimed herein.

## III. FACTUAL NARRATIVE COMMON TO ALL CLAIMS

32. After being recruited by Mr. Leonardo O'Farril ("O'Farril") and Mr. Ruben Del Rosario ("Del Rosario"), on June 22, 1999, Carrillo commenced working with CS as a Heavy Truck Driver.

33. Mr. Del Rosario, who thereafter supervised Carrillo for six (6) years, is no longer employed by CS, and Mr. O'Farril, who after Del Rosario also supervised Carrillo for another eight (8) years, has since passed away.

34. As a legal requirement to perform as a Heavy Truck Driver, Carrillo had to possess both a category nine (9) driving license issued by the Puerto Rico Department of Transportation and Public Works (DTOP) and a permit issued the Public Service Commission. Carrillo had both.

35. Throughout his employment tenure with CS, and besides performing as a Heavy Truck Driver, Carrillo would frequently perform other duties and/or occupy other

positions such as “Runner”; Mechanic Assistant; Maintenance of Equipment and Treatment Plant; Heavy Duty Equipment Operator and Workshop Custodian, among others.

36. As a Heavy Truck Driver, Carrillo’s job functions and responsibilities included, but were not limited to, the following: deliver and/or transport goods and construction materials, among others, from one place to another using heavy or tractor–trailer trucks; load and unload cargo; operated other equipment on vehicle to load, unload or disperse cargo or material; maintained radio or telephone contact with base or supervisor to receive instructions or be dispatched to new locations; assisted in loading and unloading trucks manually; positioned blocks and tied ropes around items to secure cargo for transport; recorded amount and type of cargo being delivered; took orders for new delivers; delivered goods to clients on time; transported hazardous materials; took special precautions while driving; planned routes; filled up on fuel, cleaned truck and washed windows; reported to a dispatcher any incidents encountered on the road; followed applicable traffic laws; kept a log of their activities; inspected trailer before and after the trip, and recorded any defects found; visited construction sites, and conducted other construction related duties.

37. On or around June 2013, Mr. Jorge Soto (“Soto”) began supervising Carrillo.

38. Immediately thereafter, Soto began and maintained a pattern of persecutory conduct and hostile work environment towards Carrillo that would continue until Carrillo’s illegal termination from employment with CS based on his age and physical disability.

39. Soto would constantly shout at Carrillo while threatening him with the termination of his employment. As a matter of fact, initially, Soto literally told Carrillo that

he would personally terminate him from his employment with CS. (“Yo a ti te voy a botar”), and would, at every opportunity he had, remind and repeat said threat to Carrillo.

40. Soto would further pressure, humiliate and offend Carrillo in the presence of other company employees, while telling Carrillo that: “he was not the same employee as before,” “he was slow and getting old,” and that “he wanted to terminate him from his employment with CS.”

41. Soto’s abusive verbal harassment was only directed against Carrillo, and not to other similarly situated employee drivers and/or chauffeurs who were younger than Carrillo and did not exhibit any physical disabilities as Carrillo did.

42. Simply put, it was clear and obvious that Soto did not want Carrillo working for CS simply because of his age and because of his physical limitations and disabilities, as he had previously told and/or expressed and/or hinted to Carrillo.

43. On various occasions Carrillo grieved and complained to Mr. Alejandro Paredes (“Paredes”), CS Administrator and Comptroller, about Soto’s illegal and hostile treatment towards him, including the improper and discriminatory age and disability related comments.

44. Carrillo understood that Soto wanted him out of CS because of the comments he had made and implied regarding his age and his lower back problems.

45. Every time Carrillo grieved to Paredes, he would assure him that he would talk to Soto about it, but nothing was ever accomplished, nor was any corrective action taken against Soto, since Soto continued, until Carrillo’s termination from employment, with his illegal and discriminatory conduct towards Carrillo.

46. Paredes permitted or allowed Soto to continue harassing Carrillo and took no immediate remedial action to correct and stop such unlawful employment discrimination.

47. Paredes never intended to take any remedial action, inasmuch he, as well as Soto wanted Carrillo out of CS due to Carrillo's age and disabilities.

48. Each instance in which Carrillo grieved to Paredes constituted an engagement, on the part of Carrillo, of a separate and distinct act of statutory protected activity.

49. Because nothing was being done to correct Soto's illegal behavior towards him, Carrillo decided to engage CS Vice-President and co- Owner, Mr. Ignacio Lopez Beguiristain ("Lopez").

50. As such, on or around June 2015 Carrillo further grieved and complained to Lopez about Soto's illegal conduct and harassment towards him and that said conduct was uniquely and simply because of Carrillo's age and disabilities.

51. As was the case with Paredes, nothing whatsoever was done by Lopez or CS to affront and remedy the situation. Not even an investigation was conducted.

52. As was the case with Paredes, López had also failed to act, inasmuch Soto continued harassing Carrillo.

53. As was the case with Paredes, Lopez had also wanted Carrillo terminated from his employment because Carrillo was getting old and because he had a lower back disability which, according to Soto, had slowed Carrillo down significantly.

54. Not only Soto and Paredes, but now the President of CS, was exhibiting an improper and illegal conduct towards Carrillo by not conducting, after Carrillo's grievance,

the required, legal and contractual investigation that needed to be performed, simply because of Carrillo's age and exhibited disabilities and/or simply because they were perceiving Carrillo as a disabled individual.

55. Soon after Carrillo grieved to Paredes and Lopez, he was summoned to the administrative office and told he needed to liquidate his vacation leave as of that date accumulated. As such, Carrillo had no other choice but to take two involuntary and forced vacations which he had not planned or requested.

56. Soon after Carrillo grieved to Mr. López and returned to work from his forced vacation leave, on November 9, 2015, Soto made good on his word and terminated Carrillo from his employment with CS after sixteen and a half years (16.5 years) of commendable work.

57. During those 16.5 years of employment with CS, Carrillo performed admirably. Carrillo always exceeded, duly complied and aptly performed all of his duties and responsibilities, regardless of what positions he was occupying and/or what duties he was performing at CS.

58. Carrillo met all of his job requirements and performed within and beyond his employers' job expectations.

59. Throughout his employment tenure with Defendants CS, Carrillo was never disciplined nor admonished due to his performance as a CS employee.

60. At all pertinent times, CS failed to evaluate Carrillo's performance and/or did so in a negligent and incomplete manner. Timely and accurate evaluations of Carrillo's

excellent performances could have prevented his termination, even when such termination was unjustified and discriminatorily motivated.

61. Soto communicated to Carrillo that his position as Heavy Truck Driver was being eliminated as part of a partial reorganization due to economic reasons. Nothing farther from the truth.

62. At the time of Carrillo's termination from employment, CS was showing total assets in an amount of over $25M with current liabilities totaling $12M, that is, a net margin of profit of over $13M. CS was also thriving, as of December 31, 2015, in the number and amount of contracts it had on going. Furthermore, between January 1, 2016 and March 14, 2016 CS entered into additional construction contracts totaling $6M.

63. CS reasons for Carrillo's termination from employment were pre-textual in nature. These reasons were simply fabricated in order to cover up the fact that CS wanted Carrillo out because of his age and disabilities.

64. Carrillo's termination from employment with CS was unjustified, discriminatory and retaliatory in nature due Carrillo's age physical disability and because he complained and grieved about unlawful discrimination against him in his employment.

65. Carrillo's illegal termination from his employment with CS was the direct result of Carrillo's grievances to Soto, Paredes and Lopez, regarding the harassment he was being subjected to by Soto.

66. Furthermore, said illegal termination was also the direct result of Carrillo's grievances, including the fact that he had grieved that said hostility and harassment were the direct result of the fact that Soto, Paredes and Lopez had wanted to get rid of Carrillo

because was getting old and because of his lower back ailments, a disability covered by the ADA.

67. Carrillo was replaced by a younger employee by the name of Victor Baez ("Baez") at his prior position and/or job classification of Heavy Truck Driver.

68. Baez, who had no physical ailments and/or disabilities, had been brought by Carrillo to work at CS and as such had less seniority than Carrillo and lesser qualifications and job knowledge.

69. As a matter of fact, Baez was also less qualified than Carrillo when Baez began working for CS inasmuch Baez did not possess at the time the category nine (9) license required to drive heavy trucks. Baez was also less qualified than Carrillo at the time Carrillo was terminated from his employment with CS.

70. At the time of Carrillo's termination, Baez was approximately 38 years of age, and had been working with CS for approximately eight (8) years. Carrillo on the other hand, was 53 years old and had been working with CS for sixteen and a half (16.5) years when he was unlawfully dismissed.

71. As of today Baez continues to work for CS.

72. Carrillo was dismissed and/or laid off from his employment at CS because of his age and physical disability.

73. At the time of his dismissal, Carrillo was a regular, full time employee, working without a fixed term employment contract. Carrillo's last annual salary while at CS was over $19,500.00.

74. Carrillo's termination from his employment with CS was also retaliatory in nature inasmuch said dismissal occurred soon after he grieved and reported himself to the Puerto Rico State Insurance Fund ("SIF") for treatment and while he was receiving said treatment.

75. Carrillo was dismissed after he engaged in protected activity, that is, after he reported for treatment at the SIF.

76. Carrillo's termination from employment was also unjustified and in violation of Puerto Rico Act No. 80 of May 30, 1976, 29 L.P.R.A. §185a, et seq. As such, under Act No. 80, CS owes Carrillo an amount totaling no less than $ 28,112.40, plus attorney's fees and costs.

77. As of today, CS owes Carrillo no less than ten (10) hours of vacation leave accrued and not paid. As such, under Act No. 180 of July 27, 1998, 29 L.P.R.A. §250, CS owes Carrillo an amount of no less than $1,000.

78. CS has failed to compensate Carrillo under the Puerto Christmas Bonus Act No. 148 of June 30, 1969, 29 L.P.R.A. §501. Consequently, as of today, CS owes Carrillo an amount of no less than $1,800.00.

79. Defendants have failed to provide Plaintiff's with the COBRA notice requirements set forth by Section 606 of ERISA for which they are liable to Plaintiffs in the amount of $110.00 dollars from the date of the qualifying event, that is, from the date of the unlawful termination until the date of notice of compliance with ERISA/COBRA provisions. Defendants are also liable for all health costs incurred by Plaintiffs that would have been

covered by the health plan should defendants had complied with the applicable statues. An amount of no less than $2,000.00 is being claimed for these health costs.

80. Plaintiff Cruz has suffered moral, emotional and economical damages due CS's discriminatory, unjustified and retaliatory employment practices against her husband, Carrillo.

**IV. FIRST CAUSE OF ACTION**
**(ADEA: Age Discrimination)**

81. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them herein by reference hereto.

82. Defendants CS have willfully violated ADEA's provisions by having terminated Carrillo from his employment on account of his age. Defendants further retaliated against Carrillo and terminated him from his employment after he grieved, complained and engaged in statutory protected activity covered by the ADEA. As such, defendants are liable in compensatory damages against Plaintiff Carrillo for their unlawful conduct.

83. Plaintiffs hereby demand and request that Carrillo be reinstated to his former employment with CS and that they be awarded back-pay for all lost salaries and employee benefits he would have earned but for his unlawful termination of his employment due to his age, from the date of his termination up until the date Carrillo is reinstated to his former employment.

**V. SECOND CAUSE OF ACTION**
**(ADA: Disability Discrimination, Failure to Provide Reasonable Accommodation and Retaliation)**

80. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporates them by reference hereto.

81. Defendants CS have willfully violated ADA's provisions by engaging in discriminatory employment practices against Carrillo on account of his disabilities by terminating him on account of said disabilities, and in retaliation for having engaged in statutorily protected conduct. Defendants further failed to engage in reasonable accommodation negotiations despite having knowledge of Carrillo's disabilities and despite Carrillo's requests for reasonable accommodation due to his physical disabilities. As such, Defendants are liable in compensatory damages against Plaintiff Carrillo for its unlawful conduct.

82. Plaintiff requests back pay and reinstatement or front pay in lieu of reinstatement.

**VI. THIRD CAUSE OF ACTION**
**(ERISA: Failure to Provide COBRA Notice)**

83. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them herein by reference hereto.

84. Defendants CS have willfully violated ERISA/COBRA's provisions by having failed to issue a written notice to Carrillo and Cruz of their right to continued health plan coverage after his termination of employment. As such, defendants are liable for all medical costs that they have incurred that would have been covered under their group health plan and for all statutory fines that are available to them as a result of Defendants' failure to issue that stated notice after the qualifying event comprising Carrillo's termination of employment.

85. Defendants failed to provide Plaintiffs with the notice requirements set forth by Section 606 of ERISA, for which they are liable to Plaintiffs in the amount of ONE-HUNDRED TEN DOLLARS ($110.00) per day from the date of the qualifying event, that is, from the date of the unlawful termination until the date of notice of compliance with ERISA/COBRA's provisions.

86. Due to defendants' violation of ERISA – COBRA, they are liable to Plaintiffs for compensatory damages for all of Plaintiffs' health care costs that would have been covered under defendants' group health plan had defendants complied with their COBRA notification requirements to Plaintiffs.

## VII. FOURTH CAUSE OF ACTION
## (Violation to Article II of Puerto Rico's Constitution)

87. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them herein by reference hereto.

88. Defendants CS have violated Plaintiff Carrillo's rights secured under Article II, Sections 1, 8, 16 of Puerto Rico's Constitution by violating his dignity, privacy, health at the work place and discriminating against him on the basis of his age and disability.

89. Plaintiffs are entitled to compensatory damages. Plaintiffs have suffered considerable economic and personal damages as a result of Defendants' conduct. Plaintiff Carrillo is entitled to back-pay and reinstatement to his former employment.

## VIII. FIFTH CAUSE OF ACTION
## (Violation to Puerto Rico Act Nos. 100, 80, 115, 180, 148 and 44)

90. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporates them herein by reference hereto.

91. Defendants CS have violated Plaintiff Carrillo's rights secured under Puerto Rico Acts Nos. 100, 80, 115, 180, 148 and 44. Defendants CS have discriminated against Plaintiff Carrillo on account of his age and disability because he was terminated while another less senior employee, in Carrillo's same job classification, who was also less qualified and younger than him in age and not disabled, was not terminated from his employment.

92. Defendants CS have also unjustly terminated Carrillo's employment as he was dismissed in violation of Act 80's seniority provisions. As such, Carrillo is entitled to an Act 80 compensation totaling $28,112.40.

93. Furthermore Defendants CS retaliated against Carrillo and terminated him from employment soon after he grieved to Mr. Alejandro Paredes and Mr. Ignacio López about Mr. Lugo's hostile, illegal and discriminatory conduct.

94 Furthermore Defendants CS retaliated against Carrillo and terminated him from employment while Carrillo was reported and receiving treatment for his back ailments and disabilities at the SIF. Soon after Carrillo engaged in protected activity, that is, soon after Carrillo grieved and reported to the SIF and while receiving treatment at the SIF he was illegally dismissed from his employment

94. Plaintiffs are entitled to compensatory and economic damages. Plaintiffs have suffered considerable economic and personal damages as a result of Defendants CS's conduct. Plaintiffs are entitled to back pay for all lost salaries on account of Carrillo's unlawful termination of employment. Plaintiff Carrillo hereby also demands reinstatement to his former employment.

## IX. SIXTH CAUSE OF ACTION
## (Violation to Puerto Rico's Civil Code, Art. 1802)

95. Plaintiffs re-allege each and every preceding allegation as if fully set forth herein and incorporate them herein by reference hereto.

96. Defendants CS have violated Plaintiff Cruz's rights under Puerto Rico's Civil Code, Article 1802, 31 L.P.R.A. § 5141.

97. Plaintiff Cruz is entitled to compensatory and economic damages as she has suffered by CS's discriminatory employment practices against her husband, Plaintiff Carrillo.

**WHEREFORE**, all premises being considered, Plaintiffs pray that this Honorable Court enter Judgment against Defendants CS and grant Plaintiffs the following relief:

(a) An award of compensatory damages, including but not limited to back pay and prejudgment interests, of not less than ONE MILLION DOLLARS ($1,000,000.00);

(b) An award of double compensatory damages under Puerto Rico Acts No. 100; 115 and 44.

(c) An Act 80 Severance Payment totaling $28,112.40;

(d) An award of costs and reasonable attorney's fees;

(e) Injunctive relief ordering Defendants CS to reinstate Carrillo to his former employment;

(f) An award of punitive damages under the applicable federal statutes invoked herein;

(g) An award of double compensatory damages to be determined under Puerto Rico Law 180 for vacation leave accrued and not paid in an amount of no less than $1,000.00.

(h) An award of double compensatory damages to be determined under Puerto Rico Law 148 for defendants' illegal failure to pay the statutory Christmas Bonus on time in an amount of no less than $1,800.00.

(i) Any other and further relief, which this Honorable Court may deem just, and proper; and

(j) A trial by jury.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 7th day of September, 2016.

**I HEREBY CERTIFY** that on this same date, September 7, 2016, I electronically filed the foregoing certificate of service with the Clerk of this Honorable Court using the CM/ECF system which will send notification to all counsel in this case.

**/s/ MANUEL E. LOPEZ FERNANDEZ**
**USDC PR NO. 205507**
**Attorney for Plaintiffs**
B-12 Paseo del Prado
San Juan, PR 00926
Tel.: (787) 562-2040
email: lcdomanuel.lopez@gmail.com;
manrique.lopez@hotmail.com

**/s/ JOSE G. FAGOT DIAZ**
**USDC PR NO. 20412**
**Attorney for Plaintiffs**
166 Presidente Ramirez St., Apt. No. 2
Urb. Baldrich
Hato Rey, PR 00918
(787) 367-8702
Email:jgf@fagot-law.com